138 Nev., Advance Opinion 47

IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| EDUCATION FREEDOM PAC, Appellant, vs. RORY REID, AN INDIVIDUAL; BEVERLY ROGERS, AN INDIVIDUAL; AND BARBARA K. CEGAVSKE, IN HER OFFICIAL CAPACITY AS NEVADA SECRETARY OF STATE, Respondents. | No. 84736 |



FILED

JUN 28 2022

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK

Appeal from a district court order enjoining an initiative petition's circulation and the initiative's placement on the ballot. First Judicial District Court, Carson City; Charles M. McGee, Senior Judge.

*Affirmed.*

Hutchison & Steffen, LLC, and Jason D. Guinasso, Alexander R. Velto, and Astrid Alondra Perez, Reno,
for Appellant.

Aaron D. Ford, Attorney General, Craig A. Newby, Deputy Solicitor General, and Laena St-Jules, Deputy Attorney General, Carson City,
for Respondent Secretary of State.

Wolf, Rifkin, Shapiro, Schulman & Rabkin, LLP, and Bradley S. Schrager, John M. Samberg, and Daniel Bravo, Las Vegas,
for Respondents Rory Reid and Beverly Rogers.

BEFORE THE SUPREME COURT, EN BANC.

22-20401

*OPINION*

By the Court, HARDESTY, J.:

The Nevada Constitution gives the people the power to enact laws by initiative petition, subject to the petition meeting constitutional and statutory requirements. First and foremost, under the Nevada Constitution, an initiative petition cannot require appropriations or expenditures without providing funding for those appropriations or expenditures. Reading the relevant state constitutional provisions in harmony, this requirement applies to initiatives proposing constitutional or statutory changes. Additionally, by statute, the description of effect for an initiative petition must adequately inform potential signatories about the petition's goal. Lastly, an initiative petition cannot invade the Legislature's primary role of proposing and enacting laws, a function that inherently includes deliberation and debate during legislative sessions, by directing a future Legislature to enact certain laws. This occurs when an initiative petition omits necessary statutory or constitutional changes and instead proposes a general idea and then directs the Legislature to enact laws to effectuate that idea at some future date.

The initiative before us in this matter falls short of all three of these requirements. Thus, we conclude the district court properly enjoined the circulation of the initiative petition and enjoined respondent Secretary of State from placing the initiative on the ballot. We also conclude that the statutory requirement to set a hearing on a complaint challenging an initiative within 15 days is directory, not mandatory, and under the circumstances here, the district court properly declined to dismiss the complaint despite not having set the hearing within that time frame.

 

*FACTS AND PROCEDURAL HISTORY*

Appellant Education Freedom PAC (EFP) seeks to place an initiative on the ballot that would amend the Nevada Constitution to require the Legislature to establish education freedom accounts for parents to use to pay for their child's education if their child is educated outside of the uniform system of common schools. The initiative seeks to add the following single section to Article 11 of the Nevada Constitution:

> No later than the school year commencing in 2025, and on an ongoing basis thereafter, the Legislature shall provide by law for the establishment of education freedom accounts by parents of children being educated in Nevada. Parents shall be authorized to use the funds in the accounts to pay for the education of their child in full or in part in a school or educational environment that is not a part of the uniform system of common schools established by the Legislature. The Legislature shall appropriate money to fund each account in an amount comparable to the amount of funding that would otherwise be used to support the education of that child in the uniform system of common schools. The Legislature shall provide by law for an eligibility criteria for parents to establish an education freedom account.

The initiative petition included the following description of effect on the signature pages:

> The initiative will provide parents with the ability to use funds appropriated by the Legislature to pay for the education of their child in a school or educational environment that is not a part of the public school system. The initiative requires the Legislature to establish an education freedom account program under which parents may spend money appropriated by the Legislature into those accounts to pay for some or all of their child's education outside the public school system. The

SUPREME COURT
OF
NEVADA

(O) 1947A

Legislature must establish an eligibility criteria for parents to establish an account.

The initiative will result in the expenditure of state funds to fund the accounts in an amount comparable to the public support that would be used to support the education of the child for whose benefit the account has been established in a public school. For Fiscal Year 2021-2022, the Legislature determined the statewide base per pupil amount to be $6,980 per pupil. For Fiscal Year 2022-2023, that amount is $7,074 per pupil. Generating the revenue to fund the accounts could necessitate a tax increase or a reduction in government services. The Legislature must establish the program by the start of the school year that commences in 2025.

Respondents Rory Reid and Beverly Rogers (collectively referred to as Reid) filed a complaint for declaratory and injunctive relief challenging the initiative in the district court. On the same day Reid filed his complaint, the assigned district court judge recused himself. Nine days later, Senior Judge Charles McGee was assigned to handle the matter, after Reid exercised a peremptory challenge on the remaining district court judge. EFP then intervened in the matter and filed an answer and a brief challenging the district court's authority to hear the matter given that no hearing had been set within 15 days, as is statutorily required.

Thirty days after Reid filed his complaint, the district court set the matter for a hearing. After the hearing, the court entered an order enjoining EFP from circulating the initiative petition for signatures and enjoining respondent Secretary of State from including the initiative on the ballot. First, the district court concluded that while the hearing had not been set within 15 days after the complaint was filed, dismissal was unnecessary because the hearing was expedited to the best of the court's ability. Second, the court concluded the initiative was invalid for three

reasons: (1) the initiative is an unfunded mandate, (2) the description of effect is legally misleading and contains a material omission, and (3) the initiative violates the Nevada Legislature's inherent deliberative functions by commanding the Legislature to enact certain laws. EFP now appeals.

## DISCUSSION

*The district court properly denied EFP's request to dismiss*

We first consider whether the district court properly denied EFP's request to dismiss the complaint because the district court had not set the matter for a hearing within 15 days. NRS 295.061(1) requires a party to file a complaint challenging an initiative petition's description of effect no later than 15 days after the petition is filed with the Secretary of State, which Reid did. The statute also states that "[t]he court shall set the matter for hearing not later than 15 days after the complaint is filed." NRS 295.061(1).

"This court has long held that when a statutory time limit is material, it should be construed as mandatory unless the Legislature intended otherwise." *Village League to Save Incline Assets, Inc. v. State, Bd. of Equalization*, 124 Nev. 1079, 1086, 194 P.3d 1254, 1259 (2008). Determining whether a statute's provision is mandatory or directory is a question of statutory interpretation, which we review de novo. *Markowitz v. Saxon Special Servicing*, 129 Nev. 660, 665, 310 P.3d 569, 572 (2013). "As with most issues pertaining to statutory construction, our goal is to determine and implement the Legislature's intent." *Village League*, 124 Nev. at 1087, 194 P.3d at 1260.

In *Village League*, this court considered the policy and equity considerations underlying a statute that required the State Board of Equalization to conclude certain cases by certain dates. *Id.* at 1087-88, 194 P.3d at 1260. We concluded that requiring cases to conclude by those dates

would result in some taxpayer appeals being unheard, thus leading to "harsh, unfair or absurd consequences." *Id.* at 1088, 194 P.3d at 1260-61 (internal quotation marks omitted). Therefore, this court concluded that the statute's time requirements were directory, despite the statute's use of the term "shall." *Id.* at 1089, 194 P.3d at 1261.

Here, under NRS 295.061(1), the court had 15 days after Reid filed the February 22 complaint to set a hearing, and the court did not do so. Instead, after the matter was assigned to Senior Judge McGee, he promptly entered an order, 29 days after the complaint was filed, directing the court clerk to set a hearing for the next week. The next day, the matter was set for a hearing on March 29.

Whether the district court was compelled to dismiss the complaint as a result turns on whether the 15-day hearing-setting requirement is mandatory or directory. Although the statute uses the term "shall," which is generally mandatory, *Markowitz*, 129 Nev. at 665, 310 P.3d at 572, we conclude the 15-day requirement in NRS 295.061(1) is directory, given the legislative history as well as policy and equity considerations implicated by challenges to initiative petitions.

First, the statute's legislative history is instructive. In 2007, the Legislature reduced the statutory time frame to set a hearing from 30 days to 15 days. 2007 Nev. Stat., ch. 113, § 3, at 326-27. When legislators expressed concerns that the shortened time would prevent the adjudication of complaints challenging a petition and "remove the opportunity for those complaints to be fully vetted by the courts," Senator Bob Beers, who proposed the amendment, stated that the statute "does not compromise the ability to adjudicate an issue" and instead merely requires the court to prioritize these cases over the rest of its docket. Hearing on S.B. 230 Before the S. Comm. on Legis. Operations and Elections, 74th Leg. (Nev., Mar. 27,

SUPREME COURT
OF
NEVADA

(O) 1947A

2007). Further, a representative from the Secretary of State's Office pointed out that the statute would only require the court to *set* the hearing within 15 days, not *hold* the hearing in that short period of time. Hearing on S.B. 230 Before the Assemb. Comm. on Elections, Procedures, Ethics, and Constitutional Amendments, 74th Leg. (Nev., May 1, 2007). This legislative history demonstrates that legislators wanted to ensure that courts still had an adequate opportunity to properly vet challenges to initiatives, just that the courts do so on a priority basis. Nothing in the legislative history indicates that the Legislature intended the 15-day hearing-setting requirement to be mandatory, such that a court's failure to comply with the requirement would require dismissal of the matter.

Second, public policy supports the conclusion that the hearing-setting requirement is directory. It would be harsh and absurd to dismiss a party's challenge to an initiative merely because the district court failed or was not able to set the hearing within 15 days through no fault of the party filing the complaint.

Although we conclude that the hearing-setting requirement in NRS 295.061(1) is not mandatory, we nonetheless emphasize that district courts must make every effort to comply with the expedited, statutory time frame for considering initiative challenges. Because "initiative deadlines in general are relatively short, the district court must expedite any challenges to an initiative." *Personhood Nev. v. Bristol*, 126 Nev. 599, 603, 245 P.3d 572, 575 (2010). Otherwise, challenges to initiative petitions could be used as a delay tactic to prevent an initiative from being placed on the ballot. *See Pest Comm. v. Miller*, 626 F.3d 1097, 1109 (9th Cir. 2010) (recognizing "that challenges by opponents have tied initiative petitions up in litigation for extended periods of time or that, in some cases, they have left the proponents without sufficient time to gather signatures"). Here, special

 

circumstances prevented the district court from timely setting the hearing, and the district court set the hearing as quickly as those circumstances permitted and without excessive delay. Accordingly, because the 15-day requirement for setting the hearing is directory, and considering the special circumstances of this case, the district court did not err in denying EFP's request to dismiss the complaint.

*The district court properly enjoined the EFP initiative's circulation and placement on the ballot*

Next, we consider the district court's decision to enjoin the circulation of the initiative petition for signatures and to enjoin the Secretary of State from placing the initiative on the ballot. This court reviews de novo a district court's order granting injunctive and declaratory relief. *Educ. Initiative PAC v. Comm. to Protect Nev. Jobs*, 129 Nev. 35, 41, 293 P.3d 874, 878 (2013).

*The initiative fails to comply with constitutional requirements*

EFP argues that its initiative did not need to comply with Article 19, Section 6 of the Nevada Constitution regarding unfunded mandates, and regardless, it complied with that section because the initiative does not include any expenditures or appropriations and leaves it to the Legislature to fund the education freedom accounts.

*All initiatives must comply with Article 19, Section 6*

EFP contends that it did not have to comply with the requirement to include funding provisions because it proposed only a constitutional change. We disagree.

Article 19, Section 2 of the Nevada Constitution provides that "subject to the limitations of Section 6 of this Article, the people reserve to themselves the power to propose, by initiative petition, statutes and amendments to statutes and amendments to this constitution, and to enact

SUPREME COURT
OF
NEVADA

(O) 1947A

or reject them at the polls." Section 6 provides that Article 19 "does not permit the proposal of any statute or statutory amendment which makes an appropriation or otherwise requires the expenditure of money, unless such statute or amendment also imposes a sufficient tax, not prohibited by the Constitution, or otherwise constitutionally provides for raising the necessary revenue." Nev. Const. art. 19, § 6.

"This court reviews questions of constitutional interpretation de novo." *Ramsey v. City of North Las Vegas*, 133 Nev. 96, 98, 392 P.3d 614, 616 (2017). "Constitutional interpretation utilizes the same rules and procedures as statutory interpretation." *Landreth v. Malik*, 127 Nev. 175, 180, 251 P.3d 163, 166 (2011). This court will first look to the plain meaning of the constitutional provision, and only if it is ambiguous will this court "look to the history, public policy, and reason for the provision." *Id.* A constitutional provision is ambiguous if "it is susceptible to two or more reasonable but inconsistent interpretations." *Id.* (internal quotation marks omitted). Additionally, an internal conflict within the constitutional provision's language can render it ambiguous. *Orion Portfolio Servs. 2, LLC v. County of Clark ex rel. Univ. Med. Ctr. of S. Nev.*, 126 Nev. 397, 402, 245 P.3d 527, 531 (2010). Further, much like when the court construes statutes, in construing constitutional provisions, this court must consider the multiple provisions of the constitutional article as a whole. *See, e.g., id.* at 403, 245 P.3d at 531 (providing that when this court engages in statutory interpretation, it must "consider the statute's multiple legislative provisions as a whole" (internal quotation marks omitted)).

We conclude that Article 19, Section 6 is ambiguous because it conflicts internally with Article 19, Section 2. Article 19, Section 2 provides that all initiative petitions, regardless of whether they propose statutory or constitutional changes, are subject to Article 19, Section 6's requirement to

9

include funding provisions. Yet, Article 19, Section 6's language mentions proposals of statutes or statutory amendments without reference to proposals of constitutional amendments. Thus, the plain language of Article 19, Section 6 conflicts with the plain language of Article 19, Section 2, and we must look to legislative history and public policy to determine the meaning of Section 2 and Section 6.

Both Article 19, Section 6 and the portion of Article 19, Section 2 providing that all initiatives are subject to Section 6 were proposed in 1971 through the same Senate Joint Resolution. The legislative history makes clear that the primary purpose behind the proposed amendment was to ensure that no initiative petition was presented to the voters that did not contain funding provisions when the initiative would require an appropriation or expenditure. Specifically, the sponsor of the resolution remarked that it would be "destructive for the people to ignore completely the cost of what they are proposing" and that the proposed amendment was meant to "provide a mechanism where they would have to consider [the] budget and therefore [the electorate could] act in a more informed way." Hearing on S.J.R. 1 Before the S. Judiciary Comm., 55th Leg. (Nev., Feb. 18, 1971) (statement of Senator James I. Gibson). Nothing in the legislative history specifically distinguishes between initiative petitions proposing constitutional changes and those proposing statutory changes. The stated purpose thus indicates that Article 19, Section 6 was intended to apply to initiatives proposing statutory changes and those proposing constitutional amendments.

Public policy supports this conclusion as well because there is no benefit to carving out a loophole for initiative petitions proposing

Supreme Court
of
Nevada

(O) 1947A

constitutional changes.[1]  There is no clearer example of this than the initiative at issue here, which proposes a constitutional amendment that will require significant appropriations yet includes no revenue source for those appropriations.  The initiative directs the Legislature to pass or amend laws to create a system for education freedom accounts to be used outside the public school system and to fund those accounts.  Thus, the petition amounts to a proposal to adopt or amend statutes that require an appropriation without providing a revenue source.  This is exactly what Article 19, Section 6 aims to avoid.  Initiative proponents cannot be permitted to create a hole in the state's budget merely because they proposed changes via constitutional amendment, rather than statutory amendment.

Additionally, our caselaw supports the conclusion that initiatives proposing constitutional changes must comply with Article 19, Section 6.  We have previously stated that "Section 6 applies to *all* proposed initiatives, without exception, and *does not permit* any initiative that fails to comply with the stated conditions."  *Rogers v. Heller*, 117 Nev. 169, 173, 18 P.3d 1034, 1036 (2001) (emphasis in original).  And like our conclusion here, *Rogers* recognized that Article 19, Section 2 requires all initiative petitions to comply with Article 19, Section 6.  *Id.*  We have also recognized that Article 19, Section 6's "requirement that an initiative involving an appropriation or expenditure include a revenue-generating provision prevents the electorate from creating the deficit that would result if government officials were forced to set aside or pay money without

---

[1]The dissent argues that public policy precludes the inclusion of funding provisions within the constitution.  We are not concluding that funding provisions must be included in the constitution, as they could be addressed by statute.

generating the funds to do so." *Herbst Gaming, Inc. v. Heller*, 122 Nev. 877, 890-91, 141 P.3d 1224, 1233 (2006). This purpose is only achieved if Article 19, Section 6 applies to *all* initiative petitions.

Accordingly, we conclude that all initiative petitions must comply with Article 19, Section 6's requirement that initiatives requiring expenditures or appropriations contain a funding provision. This reading harmonizes Section 6 with the rest of Article 19. *See Orion Portfolio Servs.*, 126 Nev. at 402, 245 P.3d at 531 (providing that we must construe multiple statutory provisions as a whole). Thus, regardless of whether the initiative petition is proposing statutory or constitutional changes, if the initiative requires expenditures or appropriations, it must include funding provisions.

*EFP's initiative is an unfunded mandate*

Because the underlying initiative must comply with Article 19, Section 6, we next turn to EFP's argument that the district court erred by concluding that the initiative requires an appropriation or expenditure. EFP argues that the initiative does not require money to be taken from the treasury and instead only requires the Legislature to make an appropriation after enacting laws to effectuate the education freedom accounts. Because the initiative does not include any explicit expenditure or appropriation, EFP contends it did not need to include a funding provision. EFP asserts that the funding issue is left up to the Legislature.

This court has recognized that an initiative that "makes an appropriation or requires an expenditure of money" is void if it does not also provide for the necessary revenue. *Rogers*, 117 Nev. at 173, 18 P.3d at 1036. "[A]n appropriation is the setting aside of funds, and an expenditure of money is the payment of funds." *Id.* "A necessary appropriation or expenditure in *any* set amount or percentage is a new requirement that otherwise does not exist." *Id.* at 176, 18 P.3d at 1038. "[A]n initiative makes

an appropriation or expenditure when it leaves budgeting officials no discretion in appropriating or expending the money mandated by the initiative—the budgeting official must approve the appropriation or expenditure, regardless of any other financial considerations." *Herbst Gaming*, 122 Nev. at 890, 141 P.3d at 1233. Because Article 19, Section 6 is "a threshold content restriction," if an initiative does not comply with that section, the initiative is void. *Rogers*, 117 Nev. at 173, 18 P.3d at 1036.

EFP's initiative clearly requires an appropriation of funds. EFP even acknowledges this in its own description of effect, when it states that the changes may necessitate a tax increase or a reduction in government services. The fact that the initiative leaves it up to the Legislature to determine how to fund the proposed change does not exclude the initiative from the funding mandate. The initiative is creating a new requirement for the appropriation of state funding that does not now exist and provides no discretion to the Legislature about whether to appropriate or expend the money. It requires the Legislature to fund the education freedom accounts. Thus, the initiative does not comply with Article 19, Section 6, and the district court properly determined it is void.

*The description of effect is misleading*

The district court determined that the initiative's failure to comply with Article 19, Section 6 is not the only reason it is void. It concluded that EFP also failed to provide an adequate description of effect for the initiative. We agree with the district court's analysis as to the description of effect.

NRS 295.009(1)(b) requires each initiative to "[s]et forth, in not more than 200 words, a description of the effect of the initiative . . . if the initiative . . . is approved by the voters." A description of effect "must be a straightforward, succinct, and nonargumentative summary of what the

initiative is designed to achieve and how it intends to reach those goals." *Educ. Initiative PAC v. Comm. to Protect Nev. Jobs*, 129 Nev. 35, 37, 293 P.3d 874, 876 (2013). Also, the description of effect must "not be deceptive or misleading." *Id.* at 42, 293 P.3d at 879. The description of effect "facilitates the constitutional right to meaningfully engage in the initiative process by helping to prevent voter confusion and promote informed decisions." *Las Vegas Taxpayer Accountability Comm. v. City Council of Las Vegas*, 125 Nev. 165, 177, 208 P.3d 429, 437 (2009) (internal quotation marks omitted).

The description of effect here provides that "[t]he initiative will result in the expenditure of state funds to fund the accounts in an amount comparable to the public support that would be used to support the education of the child." It then states that the per-pupil expenditure base for fiscal year 2021-2022 was $6,980 and the per-pupil expenditure base for fiscal year 2022-2023 was $7,074. Lastly, it states that "[g]enerating the revenue to fund the accounts *could* necessitate a tax increase or a reduction in government services." (Emphasis added.)

The description of effect omits the need for or nature of the revenue source to fund the proposed education freedom accounts. Because the initiative petition does not include its own funding source, the description of effect is misleading about the impact the proposed change would have on the state's budget. The inevitable ramification of this initiative is either an increase in taxes or a reduction in public school funding or other government services, and the description of effect's failure to address this substantial impact is a material omission. Additionally, because the examples included in the description of effect are lower than

SUPREME COURT
OF
NEVADA

(O) 1947A

14

the amounts of actual per-pupil funding for the cited fiscal years,[2] the description of effect misleads signatories into thinking that the impact on the state's resources would be less substantial. The description of effect is deceptive and misleading about the substantial fiscal impact the proposed change would have on the state's budget, and the district court properly determined that these deficiencies render the initiative void. *See Las Vegas Taxpayer*, 125 Nev. at 182, 208 P.3d at 440 (explaining that "the description of effect is a statutory requirement for placement on the ballot").

*The initiative impedes the Legislature's deliberative function*

Lastly, EFP contends that because there are numerous constitutional provisions directing the Legislature to enact laws to effectuate those provisions, an initiative petition proposing a constitutional amendment that directs the Legislature to enact laws is not improper. Thus, EFP argues that the district court erred in concluding that the initiative petition was void because it would impair the Legislature's inherent deliberative function. We disagree.

As an initial matter, we must determine whether Reid's challenge to the initiative in this regard is proper for our consideration preelection. As we explained in *Herbst Gaming*, and as relevant here, there are two types of challenges to an initiative that are appropriate for preelection consideration: (1) those based on an argument that the initiative did not meet the procedural requirements for placing an initiative on the ballot, and (2) those based on a contention that "the subject matter is not appropriate for direct legislation under constitutional or statutory limits on

---

[2]Reid asserts that the correct per-pupil expenditure base for fiscal year 2021-2022 is $10,204 and for fiscal year 2022-2023 is $10,290, and EFP does not contest those numbers.

the initiative power." 122 Nev. at 882-83, 141 P.3d at 1228. The legislative power "refers to the broad authority to enact, amend, and repeal laws." *Halverson v. Hardcastle*, 123 Nev. 245, 260, 163 P.3d 428, 439 (2007). Because Reid's challenge is based on the idea that the Legislature itself would not be permitted to enact the change proposed in the initiative, we conclude his challenge falls under the second type of challenge permitted preelection.

"The people's initiative power is 'coequal, coextensive, and concurrent' with that of the Legislature; thus, the people have power that is legislative in nature." *Nevadans for the Prot. of Prop. Rights, Inc. v. Heller*, 122 Nev. 894, 914, 141 P.3d 1235, 1248 (2006) (quoting *Gallivan v. Walker*, 54 P.3d 1069, 1080 (Utah 2002)). Because the people's initiative power is legislative in nature, that power is subject to the same limitations placed on each Legislature. "Implicit in the plenary power of each legislature is the principle that one legislature cannot enact a statute that prevents a future legislature from exercising its law-making power," and there is "a general rule that one legislature cannot abridge the power of a succeeding legislature." *Wash. State Farm Bureau Fed'n v. Gregoire*, 174 P.3d 1142, 1150 (Wash. 2007); *see also Ex parte Collie*, 240 P.2d 275, 276 (Cal. 1952) ("It is the general rule that one legislative body cannot limit or restrict its own power or that of subsequent Legislatures and that the act of one Legislature does not bind its successors."); *N.D. Legis. Assemb. v. Burgum*, 916 N.W.2d 83, 91 (N.D. 2018). Thus, the people, acting through the initiative power, can no more command the next Legislature to take specific legislative action than a current Legislature can bind a future one.

Accordingly, if an initiative seeks to effectuate a change, its provisions must include the new laws or amendments to current laws that effectuate that change, rather than directing the Legislature to enact laws

SUPREME COURT
OF
NEVADA

(O) 1947A

16

to accomplish the initiative's proposed change. "If the people have the power to enact a measure by initiative, they should do so directly . . . ." *Am. Fed'n of Lab. v. Eu*, 686 P.2d 609, 627 (Cal. 1984). By directing the Legislature to enact laws in accordance with the change proposed in the initiative petition, the initiative impairs the Legislature's deliberative function. The Legislature no longer has the discretion to determine whether the enactment of laws giving effect to the initiative's proposed change is proper, warranted, or in the best interest of each individual legislator's constituents.

EFP proposes a constitutional amendment that merely directs the Legislature to enact laws creating education freedom accounts with unspecified eligibility criteria and funding sources. Not only does this impede the Legislature's inherent discretion in adopting or amending laws, but it places an unclear change in front of the electorate by not providing *how* the proposed change will be effectuated. Such initiative petitions are not a permissible exercise of the people's initiative power. Accordingly, we conclude the district court properly declared the underlying initiative void as impairing the Legislature's deliberative function.

## *CONCLUSION*

The district court did not err in denying EFP's request to dismiss Reid's challenge to the initiative petition based on the court's noncompliance with NRS 295.061(1)'s 15-day hearing-setting requirement, as that requirement is directory rather than mandatory. Additionally, the district court did not err in enjoining the circulation of the initiative petition or in enjoining the Secretary of State from placing the initiative on the ballot. All initiative petitions must comply with Article 19, Section 6 of the Nevada Constitution, which demands that any initiative requiring an appropriation or expenditure must also include a funding provision.

17

Because EFP's initiative does not include funding provisions, it is an unfunded mandate and is void. Further, EFP's description of effect rendered the initiative void because it was misleading about the impact the proposed change would have on the state's budget. Lastly, the initiative would impair the Legislature's inherent deliberative function because it directs the Legislature to enact statutes to effect its goal rather than proposing those laws itself. Accordingly, the initiative is void, and we affirm the district court's injunction.

_____, J.
Hardesty

We concur:

_____, C.J.
Parraguirre

_____, J.
Stiglich

_____, J.
Cadish

_____, J.
Silver

SUPREME COURT
OF
NEVADA

(O) 1947A

HERNDON, J., with whom PICKERING, J., agrees, concurring in part and dissenting in part:

While I concur with the majority's conclusion that NRS 295.061(1)'s 15-day requirement to set a hearing on an initiative challenge is directory, and that the district court properly denied the request to dismiss the complaint under these circumstances, I write separately because I would reverse the district court's order on its merits. First, under the plain language of Article 19, Section 6 of the Nevada Constitution, its funding mandate applies only to initiative petitions proposing statutes or statutory amendments, not to initiatives proposing constitutional amendments. Second, the description of effect here was statutorily sufficient in that it explained the initiative's goal within the 200-word limit without being misleading. Third, there is no precedent precluding initiatives from proposing constitutional amendments that direct the Legislature to enact laws, and respondents did not provide persuasive argument to support adopting such a precedent. Thus, I respectfully dissent.

*Article 19, Section 6 applies only to initiatives proposing statutory changes*

Any evaluation of Article 19, Section 6 must be done by reading it in harmony with Article 19, Section 2(1). Article 19, Section 2(1) provides that "the people reserve to themselves the power to propose, by initiative petition, statutes and amendments to statutes and amendments to this Constitution, and to enact or reject them at the polls." Nev. Const. art. 19, § 2(1). This language establishes the people's right to engage in three distinct, initiative-based actions: (1) to propose statutes, (2) to propose amendments to existing statutes and (3) to propose amendments to our state constitution. Article 19, Section 6 expresses a restriction on the

initiative process. It "does not permit the proposal of *any statute or statutory amendment* which makes an appropriation or otherwise requires the expenditure of money, unless such statute or amendment also imposes a sufficient tax, not prohibited by the Constitution, or otherwise constitutionally provides for raising the necessary revenue." Nev. Const. art. 19, § 6 (emphasis added). This court has very clearly held that when a constitutional provision is unambiguous, the court will apply it according to the plain language of the provision. *Nevadans for Nev. v. Beers*, 122 Nev. 930, 942, 142 P.3d 339, 347 (2006). Here, the plain language of Section 6 is unambiguous and clearly singles out two distinct initiative-based actions available to the people: proposals for new statutes and proposals for amendments to existing statutes; while specifically excluding a third initiative-based action available to the people: proposals to amend the constitution. The majority broadens Section 6's application by fashioning a conflict between Sections 2 and 6 that does not exist. Section 2 outlines the requirements for all initiative petitions. Thus, its application is intentionally broad. Section 6 discusses a limitation for initiative petitions that applies to those proposing statutory changes only. Its application is therefore very specific. As we have repeatedly recognized, when "a general statutory provision and a specific one cover the same subject matter, the specific provision controls." *In re Resort at Summerlin Litig.*, 122 Nev. 177, 185, 127 P.3d 1076, 1081 (2006). The same interpretive rule applies here. *See Landreth v. Malik*, 127 Nev. 175, 180, 251 P.3d 163, 166 (2011) ("Constitutional interpretation utilizes the same rules and procedures as statutory interpretation."). The fact that Section 6 specifically applies only to initiatives proposing statutory changes does not create a conflict with the broader provisions of Section 2.

Furthermore, the majority ignores another long-standing canon of statutory interpretation: "*expressio unius est exclusio alterius*, 'the expression of one thing is the exclusion of another.'" *Poole v. Nev. Auto Dealership Invs., LLC*, 135 Nev. 280, 285, 449 P.3d 479, 483-84 (Ct. App. 2019). By limiting its application to "any statute or statutory amendment," Section 6, excludes initiatives proposing constitutional changes. This reading harmonizes Section 6 with the rest of Article 19, which distinguishes between petitions proposing statutory changes and those proposing constitutional changes. *See, e.g.*, Nev. Const. art. 19, § 2(3) (setting forth the process for an initiative petition that "proposes a statute or an amendment to a statute"); *id.* § 2(4) (setting forth the process for an initiative petition that "proposes an amendment to the Constitution"). Thus, Article 19, Section 6 is unambiguous and can only be interpreted as applying to initiatives proposing statutory changes.

Even assuming Section 6 is ambiguous, its history supports limiting Section 6 to proposals to enact or amend statutes, not proposals to amend the constitution. *See Strickland v. Waymire*, 126 Nev. 230, 234, 235 P.3d 605, 608 (2010) (noting that "[t]he goal of constitutional interpretation is to determine the public understanding of a legal text leading up to and in the period after its enactment or ratification" (internal quotation marks omitted)). Section 6 was added to the Nevada Constitution by popular vote in 1972. The draft amendment originated in the 1969 Nevada Legislature as Senate Joint Resolution 1. The first draft was written broadly to apply to both proposals for constitutional amendments and to proposals to enact or amend statutes. S.J.R. 1, 55th Leg. (Jan. 20, 1969) ("[t]he provisions of this article do not apply to any measure which . . . makes an appropriation or by its operation requires the expenditure of money"). After discussion,

the draft language was narrowed to read, "[t]his article does not permit the proposal of any statute or statutory amendment which makes an appropriation or otherwise requires the expenditure of money unless such statute or amendment also imposes a sufficient tax, not prohibited by the Constitution, or otherwise constitutionally provides for raising the necessary revenue." S.J.R. 1, 55th Leg. (Jan. 20, 1969) (First Reprint). It was in this form that what became Section 6 was submitted to and approved by the voters. And the ballot submitting the addition of Section 6 to the constitution made expressly clear that this limitation on the people's reserved initiative rights only applied to initiatives proposing to enact or amend statutes, not proposals to amend the constitution. Secretary of State, *Constitutional Amendments to Be Voted on in the State of Nevada at the General Election, Nov. 7, 1972*, Question No. 5, 21. Thus, the 1972 explanation of Article 19, Section 6 on the ballot stated that the new section would "prohibit an initiative petition *proposing any statute* which makes an appropriation or requires an expenditure of money, unless the same proposal contains a sufficient valid tax to raise the necessary revenue." *Id.* (emphasis added).

Given its text and history, I cannot agree with the majority's conclusion that this court's perception of sound public policy allows us to read Section 6 as applying to all initiatives. Because a state constitution is meant to be a basic set of laws and principles that set out the framework of the state's government, including a funding provision for each specific basic law and principle within that document would be inappropriate. Additionally, constitutional provisions generally provide certain rights or requirements and then rely on the Legislature to adopt laws to facilitate those provisions, which may include measures for funding. Thus, the

Legislature's decision to leave initiatives proposing constitutional changes out of Section 6's funding requirement does not present a public policy concern, since funding provisions are a statutory rather than constitutional matter.

And while the majority relies on *Rogers* and *Herbst Gaming* to support its conclusion that Article 19, Section 6 must apply to all initiatives, those cases concerned initiatives that only proposed statutory amendments. Thus, the court was not, in either case, asked to opine on constitutional amendments, and it did not, in either case, address constitutional amendments. As such, *Rogers'* reference to "all" was clearly limited to proposed *statutory* amendments, and the plain language of Section 6 does not support a broader statement. Accordingly, I conclude the district court erred in determining that the initiative is void as an unfunded mandate because Section 6 excludes constitutional amendments from its funding mandate.

*The description of effect was statutorily adequate*

Next, I disagree with the majority's conclusion that the description of effect was misleading. A description of effect "must be a straightforward, succinct, and nonargumentative summary of what the initiative is designed to achieve and how it intends to reach those goals." *Educ. Initiative PAC v. Comm. to Protect Nev. Jobs*, 129 Nev. 35, 37, 293 P.3d 874, 876 (2013). Because the description of effect is limited to only 200 words, it "cannot constitutionally be required to delineate every effect that an initiative will have; to conclude otherwise could obstruct, rather than facilitate, the people's right to the initiative process." *Id.* at 38, 293 P.3d at 876.

"In determining whether a ballot initiative proponent has complied with NRS 295.009, it is not the function of this court to judge the wisdom of the proposed initiative." *Id.* at 41, 293 P.3d at 878 (internal quotation marks omitted). By affirming the district court's decision here, the majority does just that. The district court and the majority conclude that the initiative will create a significant impact on the state's budget if adopted. In reaching this conclusion, however, they went beyond reviewing the description of effect to judging the appropriateness of adopting the initiative as proposed based on a perceived ramification on the state's budget. This court has stated that while the description of effect is meant to prevent voter confusion and promote informed decisions, it does not have to address every possible ramification. *See id.* at 37, 293 P.3d at 876.

The description of effect here is legally sufficient. Considering the 200-word limit, it was straightforward, succinct, and nonargumentative and addressed the initiative's goal and how that goal would be achieved. The description does not have a material omission because it acknowledges the possible effect on taxes or government services. NRS 295.009 does not require more. In particular, the description does not have to be perfect or acknowledge every hypothetical effect. *Id.* at 42, 293 P.3d at 879 (providing that "the description of effect does not need to explain 'hypothetical' effects of an initiative"). Additionally, to the extent the district court found that the examples of per pupil funding were inaccurate, it could have amended the description to reflect the correct figures. NRS 295.061(3).

The description of effect is only intended to assist signatories with deciding whether to sign the initiative petition. *Educ. Initiative PAC*, 129 Nev. at 43, 293 P.3d at 880 ("The utility of the description of effect is confined to the preliminary phase of the initiative process, when the

SUPREME COURT
OF
NEVADA

(O) 1947A

6

proponent seeks to garner enough initial support so that the initiative will be considered by the Legislature and the voters."). Once the matter is placed on the ballot, it is accompanied by a neutral summary, which has no word limit, drafted by the Secretary of State and arguments for and against voter approval drafted by two separate, independent committees. NRS 293.250; NRS 293.252. The summary and arguments for and against are what educate voters on whether to approve or reject the initiative. Thus, I disagree with the district court's conclusion that the description of effect is so misleading that it renders the initiative void.

*An initiative can propose a constitutional amendment that requires the Legislature to adopt laws*

Lastly, I disagree with the majority's conclusion that an initiative petition proposing a constitutional amendment exceeds the people's initiative power if it requires the Legislature to adopt laws to effectuate that amendment. There is no Nevada precedent precluding such initiatives. Further, there are numerous examples within our constitution that require the Legislature to act. *See* Nev. Const. art. 4, § 26 (requiring the Legislature to "provide by law, for the election of a Board of County Commissioners"); Nev. Const. art. 9, § 2 (requiring the Legislature to "provide by law for an annual tax"); Nev. Const. art. 11, § 2 (requiring the Legislature to "provide for a uniform system of common schools"); Nev. Const. art. 12, § 1 (requiring the Legislature to "provide by law for organizing and disciplining the Militia of this State"). The preclusion of initiatives that propose similar constitutional amendments that require the Legislature to act only chills the people's initiative power.

The underlying initiative is not one that is directing the Legislature to adopt a resolution, *see Am. Fed. of Labor v. Eu*, 686 P.2d 609, 627 (Cal. 1984), or apply to the U.S. Congress to attempt to change federal

constitutional law, *see In re Initiative Petition No. 364*, 930 P.2d 186, 195-96 (Okla. 1996). Those types of initiatives are improper because they are not enacting laws. In contrast, the underlying initiative proposes a state constitutional amendment. Courts should not prevent the electorate from considering such an initiative petition merely because the initiative does not propose specific statutes or statutory amendments. Placing such a requirement on initiatives creates a slippery slope approach of evaluating initiatives preelection because it puts the court in a position of determining what level of specificity is appropriate for an initiative to make it on the ballot. That is not this court's role, nor should it be.

Accordingly, I would reverse the district court's order enjoining the circulation of the initiative and enjoining the Secretary of State from placing the initiative on the ballot. Because the initiative is proposing a constitutional change, it did not need to comply with Article 19, Section 6 of the Nevada Constitution. Further, the initiative's description of effect was statutorily adequate. Lastly, there is no preclusion on initiatives proposing constitutional amendments that direct the Legislature to enact laws.

_____, J.
Herndon

I concur:

_____, J.
Pickering