# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 01-2012
_____

| | | |
|---|---|---|
| Manuel de Llano, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the District of |
| | * | North Dakota. |
| Duane Berglund; David Danbom; | * | |
| Allan G. Fischer; Michael Garrison; | * | |
| Rick D. Johnson; Andy Keogh; | * | |
| Jim L. Ozbun; Jimmie Richardson; | * | |
| Charles A. Sawicki; Sharon A. Siverts, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: November 13, 2001

Filed: March 13, 2002
_____

Before BYE, HEANEY, and BEAM, Circuit Judges.
_____

BEAM, Circuit Judge.

Manuel de Llano ("de Llano"), formerly an employee of North Dakota State University ("NDSU"), filed this 42 U.S.C. § 1983 suit against several NDSU administrators (collectively, the defendants), alleging that his termination as a tenured physics professor violated his First Amendment and procedural due process rights.

The district court[1] granted the defendants' motion for summary judgment, and we affirm.

## I.    BACKGROUND

In 1985, de Llano was hired by NDSU to be a professor of physics and chairman of the department.  He was awarded tenure in 1988.  Thus began several years of acrimonious relations between de Llano, the NDSU administration and his physics department colleagues.  In January 1990, de Llano was removed as chairman at the request of the physics faculty, "to improve the morale of the department and to strengthen the program in physics."  After his chairmanship was revoked, de Llano authored a series of derogatory letters concerning various NDSU faculty members.  de Llano received several letters from NDSU administrators urging him to cease his disruptive conduct.  In response, de Llano wrote more letters–to the local newspaper, the school newspaper, and the Chancellor and President of the university system.  The letters expressed his dissatisfaction with a variety of ongoing conflicts he was having with the department.  During the 1992 fall semester, over ninety percent of de Llano's introductory physics class transferred out of his section to a new section opened by the department chair, complaining about de Llano's poor teaching. On November 26, 1993, de Llano was censured by his department for verbally harassing the department secretary.  de Llano was also censured for failing to attend faculty meetings.

On February 23, 1994, Science Dean Fischer and Physics Department Chairman Sawicki sent de Llano a "Notice of Intent to Terminate."  On March 9, 1994, President Ozbun sent de Llano a "Notice of Dismissal."  The dismissal notice identified six grounds for de Llano's dismissal: (1) complete and utter lack of collegiality and cooperation with peers resulting in three censures making de Llano's

---

[1]The Honorable Rodney S. Webb, Chief Judge, United States District Court for the District of North Dakota.

continued effectiveness in the department impossible; (2) harassed physics department staff; (3) refused to present complaints through proper channels after repeated warnings and misrepresented facts to other university employees; (4) libeled the physics department chair and dean with false accusations; (5) failed to correct deficient behavior even after receiving two letters of reprimand; and (6) excessive filing of frivolous grievances with the intent to harass employees and supervisors.

Pursuant to NDSU procedure, de Llano requested a hearing before a Special Review Committee ("Review Committee"). On August 15, 1994, the Review Committee found in de Llano's favor, concluding that the Notice of Dismissal did not include specific enough allegations to warrant dismissal. President Ozbun rejected the Review Committee's findings. de Llano asked for a hearing in front of the Standing Committee on Faculty Rights ("Standing Committee"), and on May 12, 1995, the Standing Committee concluded that there was adequate cause for de Llano's dismissal. On May 15, 1995, Ozbun officially fired de Llano, prompting de Llano to appeal to the North Dakota State Board of Higher Education ("the Board"). The Board affirmed de Llano's firing and this lawsuit commenced.

de Llano argues that his firing violated his constitutional rights. He argues that his right to procedural due process was violated because President Ozbun had no authority to reject the Review Committee's findings. de Llano also claims that standards of due process were not met by the dismissal proceeding because he was accused of general violations of university policy and not specific acts. In addition, de Llano argues that the administrators who terminated him conspired to deny him an impartial opportunity to be heard. de Llano also claims his First Amendment rights were violated because, he avers, his firing was the result of the many letters he wrote publicly criticizing NDSU.

## II.    DISCUSSION

We review the grant of summary judgment de novo. Calvit v. Minnesota Pub. Schs., 122 F.3d 1112, 1116 (8th Cir. 1997).  All evidence and reasonable inferences from the evidence are viewed in the light most favorable to the nonmoving party.  Id. Summary judgment is appropriate only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

### A.    Procedural Due Process Claim

Procedural due process claims require a two-step analysis.  First, a plaintiff must prove that as a result of state action the plaintiff was deprived of some life, liberty, or property interest.  Second, the plaintiff must prove that the state's deprivation of that interest was done without due process.  Krentz v. Robertson Fire Prot. Dist., 228 F.3d 897, 902 (8th Cir. 2000).  Here, the defendants concede that de Llano has a property interest in his job; therefore, the only issue is whether he received the process that was due in connection with his firing.  Riggins v. Board of Regents of the Univ. of Nebraska, 790 F.2d 707, 710 (8th Cir. 1986).

The Supreme Court has held that due process requires, prior to termination, that public employees with a property interest in their job must be given notice of the charges against them, an explanation of the evidence, and an opportunity to respond. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985).  "It should be an initial check against mistaken decisions–essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action."  Id. at 545-46.

In this case, the defendants accorded de Llano the three elements of pretermination due process specifically outlined by Loudermill.  de Llano was not only given notice of the charges against him and an explanation of those charges in

the Notice of Dismissal sent by the President, he was also given notice several times before the final termination notice that he was treading on thin ice and advising him to reform his disruptive conduct. While these pretermination warnings may not be sufficient, by themselves, to provide de Llano due process, two hearings were also held prior to his termination where evidence was introduced supporting the reasons for his termination. See Young v. City of St. Charles, 244 F.3d 623, 627 (8th Cir. 2001) (two hearings adequate notice under Due Process Clause). These hearings provided de Llano with an adequate opportunity to present his case before termination. In fact, during a fifteen-hour hearing before the Standing Committee, de Llano's counsel was given the opportunity to question NDSU's witnesses and call his own. "In contrast, the Supreme Court found a violation of procedural due process in Loudermill because the plaintiffs had had no chance to rebut the charges against them before they were fired." Riggins, 790 F.2d at 711. We find de Llano's contention that the Notice of Dismissal only alleged vague accusations to be without merit. The dismissal notice specifically outlined that de Llano's lack of collegiality, harassment of department personnel, refusal to heed prior warnings regarding his conduct, and the excessive filing of grievances were the reasons for his termination.

de Llano contends that President Ozbun had no authority to reject the Review Committee's decision to retain him. He also claims that the Standing Committee was improperly constituted. He argues that these two actions violated the internal rules prescribed by NDSU for termination proceedings. We reject this argument because federal law, not state law or NDSU policy, determines what constitutes adequate procedural due process. Loudermill, 470 U.S. at 541. Minimum procedural requirements are a constitutional guarantee and they cannot be enlarged or reduced by the internal NDSU handbook outlining termination procedures. Id. Therefore, even if de Llano is correct that internal procedures were violated, this would at most provide him with a state law cause of action, and not a federal constitutional claim. Once it is determined that de Llano was afforded with notice and an opportunity to

be heard in accordance with Loudermill, the constitutional requirement is satisfied. We find that de Llano was provided with more than the basic Loudermill guarantees.

Finally, de Llano argues that his right to due process was violated because the defendants were biased and the hearings provided were a sham because the decision-makers had already made up their minds to terminate him regardless of the evidence presented. However, de Llano has not come forward with any evidence to support this assertion. "We begin with a presumption that decision-makers are honest and impartial. [The plaintiff] offers no evidence of vindictive behavior beyond his mere statements of belief that the Board members acted in this manner. . . . [The plaintiff's] beliefs have no effect and do not create a genuine issue of material fact that would preclude summary judgment." Marler v. Missouri State Bd. of Optometry, 102 F.3d 1453, 1457 (8th Cir. 1996) (internal citations omitted). de Llano cites Brady v. Gebbie, 859 F.2d 1543 (9th Cir. 1988) to support his contention that if decision-makers have already made up their minds, a due process violation occurs. However, in Brady the plaintiffs presented evidence that the decision-maker stated, "I don't know what in heaven's name you can tell me . . . that would make me change my mind." Id. at 1554. There is no evidence that any kind of similar comment was made here by any of the several individuals that reviewed the decision to terminate de Llano. In short, de Llano provides no evidence of bias, he merely provides his own unsupported allegations.

## B.     First Amendment Claim

de Llano contends that he was terminated in violation of his First Amendment rights because of several letters he wrote to the local newspaper, President Ozbun, and the student newspaper criticizing the NDSU administration. The First Amendment is violated when a public employee is terminated as a result of his speech if the employee's speech can be characterized as speech about a matter of public concern. Connick v. Myers, 461 U.S. 138, 146 (1983). This inquiry is a question of

-6-

law for the court to decide. Id. at 148 n.7. If the speech at issue is found to be constitutionally protected, the plaintiff then bears the burden of showing that the protected speech was a substantial or motivating factor in the decision to terminate him. Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977). This is a question of fact, but the sufficiency of the evidence to create an issue of fact is a question of law. Cox v. Miller County R-I Sch. Dist., 951 F.2d 927, 931 (8th Cir. 1991). "In reviewing a sufficiency of the evidence determination, an appellate court must view the facts and all reasonable inferences to be drawn therefrom in the light most favorable to the non-moving party." Id.

de Llano authored six letters prior to his termination that he claims were constitutionally protected because they pertained to matters of public concern. To determine whether speech addresses matters of public concern, we examine the content, form, and context of the speech as revealed by the entire record. Connick, 461 U.S. at 147-48. "The form and context are examined to determine whether the public employee speaks as a concerned citizen informing the public that the government is not properly discharging its duties, or merely as an employee speaking bout internal practices relevant only to fellow employees." Calvit, 122 F.3d at 1117. An examination of the content of de Llano's letters reveals that most of his commentary, although couched in general terms, related specifically to the ongoing feuds he was having with the defendants. His letters essentially amounted to publicly airing his dissatisfaction with his removal as chair of the physics department and the department's undervaluation of his strong commitment to research. de Llano's letters indicated that he was unhappy with several personnel decisions made by NDSU, ranging from which people were chosen as department chairs, to the failure of NDSU to rehire a Gulf War veteran. These are precisely the type of "[s]tatements that deal with personnel matters [that] are not generally protected by the First Amendment." Belk v. City of Eldon, 228 F.3d 872, 879 (8th Cir. 2000). One of de Llano's letters criticized the allocation of travel money within departments, although the letter failed to disclose that de Llano himself had been prohibited from travel that overlapped with

one of his classes as a sanction for his inappropriate conduct within the department. Another of de Llano's letters aired his complaint that he was not allowed to bring in a Brazilian scientist to work with him. These are just a few examples of de Llano's pattern of publicly complaining about private disputes that were unique to him and not a matter of public concern.

After thoroughly reviewing de Llano's letters, it appears there are occasional references to comments that are properly characterized as issues of public concern. For instance, in one of his letters de Llano criticized the growing percentage of non-academic staff at NDSU. In addition, in one of his letters he cited the rising salaries of NDSU administrators as evidence that money was being poorly spent. "We generally have held that speech about the use of public funds touches upon a matter of public concern." Kincade v. City of Blue Springs, 64 F.3d 389, 396 (8th Cir. 1995). However, there is no evidence in the record that these few comments on matters of public concern were a substantial or motivating factor in the decision to terminate him. Doyle, 429 U.S. at 287. We are unable to ascertain any evidence that he was terminated because of the letters he wrote to the various venues. The dismissal notice given to de Llano outlines a number of reasons for his termination and those reasons were substantiated in two separate hearings. Not one of the reasons stated for his termination related to de Llano's letters. The fact that de Llano publicly criticized NDSU administrators, and that some of the criticism is constitutionally protected, is insufficient to carry his burden of establishing that the letters were a substantial factor in the termination decision. Cox, 951 F.2d at 932. We conclude that as a matter of law, even when viewed in the light most favorable to the plaintiff, the record establishes that de Llano failed to meet his burden of showing that his letters were a substantial factor in the decision to terminate him.

## III.   CONCLUSION

For the reasons stated, the judgment of the district court is affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.