129 Nev., Advance Opinion 69

## IN THE SUPREME COURT OF THE STATE OF NEVADA

WARREN MARKOWITZ, AN
INDIVIDUAL; AND JACQUELINE
MARKOWITZ, AN INDIVIDUAL,
Appellants,
vs.
SAXON SPECIAL SERVICING; AND
DEUTSCHE BANK NATIONAL TRUST
COMPANY,
Respondents.

No. 58761

**FILED**

OCT 03 2013

Appeal from a district court order denying a petition for judicial review in a Foreclosure Mediation Program matter. Eighth Judicial District Court, Clark County; Jessie Elizabeth Walsh, Judge.

*Affirmed.*

Law Office of Jacob L. Hafter & Associates and Jacob L. Hafter and Michael K. Naethe, Las Vegas,
for Appellants.

McCarthy & Holthus, LLP, and Kristin A. Schuler-Hintz, Las Vegas,
for Respondents.

_____

BEFORE PICKERING, C.J., GIBBONS, HARDESTY, PARRAGUIRRE, DOUGLAS, CHERRY and SAITTA, JJ.

*OPINION*

PER CURIAM:

Under Nevada's Foreclosure Mediation Program Rules, the deed-trust beneficiary must submit an appraisal and/or a broker's price

13-29456

opinion prepared "no more than 60 days before the commencement date of the mediation" that provides a valuation for the home that is the subject of the mediation. Saxon Special Servicing attended the underlying mediation and provided a broker's price opinion that was 83 days old at the time of mediation. We are asked to decide whether the mediation rule requiring an appraisal or broker's price opinion that is no more than 60 days old at the time of the mediation mandates strict or substantial compliance. We conclude that because a current appraisal or broker's price opinion is intended to facilitate good-faith mediation negotiations, the rule's content-based provision governing the appraisal's age is directory rather than mandatory, and thus, substantial compliance with the 60-day provision satisfies the mediation rule. Because the broker's price opinion here contained a recent appraisal of the home's value adequate to facilitate negotiations, and the homeowners did not demonstrate that they were prejudiced by the 23-day age differential between the price opinion provided and the rule's age provision, Saxon Special Servicing substantially complied with the foreclosure mediation rule requiring a current appraisal, and we therefore affirm the district court's order denying the petition for judicial review.

I.

Appellants Warren and Jacqueline Markowitz obtained a home loan from Fremont Investment & Loan, for which they executed a promissory note in Fremont's favor. The note was later assigned to respondent Deutsche Bank National Trust Company and serviced on Deutsche Bank's behalf by respondent Saxon Special Services. After the Markowitzes stopped making payments to Saxon, a notice of default was

recorded. The Markowitzes then elected to mediate in Nevada's Foreclosure Mediation Program (FMP).

The mediation occurred on December 28, 2010. Warren attended the mediation in person along with counsel, and Jacqueline attended by telephone. Saxon, purporting to represent Deutsche Bank, appeared through counsel. Saxon provided all of the required documents for the mediation, including an 83-day-old broker's price opinion (BPO).[1] During the mediation, the Markowitzes raised concerns about Saxon's authority to participate. Saxon's counsel explained that she had the authority to negotiate a loan modification. The mediator spoke by telephone with a representative of Saxon who confirmed that Saxon was the servicer of the loan. Despite this confirmation, the Markowitzes were not convinced that Saxon had authority to negotiate a loan modification, and they elected to terminate the mediation.

The mediator issued a statement indicating that the Markowitzes failed to provide certain documents for the mediation and that Saxon failed to bring a current BPO. The mediator's statement did not indicate that any party lacked authority to negotiate or failed to attend the mediation. The Markowitzes filed a petition for judicial review, which, after briefing and argument, the district court denied, concluding that the parties had negotiated in good faith with valid authority and that there was no reason to withhold the FMP certificate. This appeal followed.

_____

[1]A broker's price opinion is a "written analysis, opinion or conclusion . . . relating to the estimated price for a specified parcel of real property." NRS 645.2515(8).

## II.

### A.

The primary issue in this appeal concerns the 83-day-old BPO that Saxon provided for the mediation. The relevant foreclosure rule in place at the time of this dispute required that

> [t]he beneficiary of the deed of trust or its representative shall produce an appraisal done no more than 60 days before the commencement date of the mediation with respect to the real property that is the subject of the notice of default and shall prepare an estimate of the "short sale" value of the residence that it may be willing to consider as a part of the negotiation if loan modification is not agreed upon.

FMR 8(3) (2010). The rule also permitted the mediator, in his or her discretion, to "accept a broker's price opinion letter (BPO) in addition to or in lieu of the appraisal." FMR 8(4) (2010). These rules have since been amended,[2] but the amendments do not change our analysis.

While the mediator here reported that Saxon failed to provide an "appraisal within 60 days of mediation," the district court, in its de novo review, concluded that although the BPO was not prepared within 60 days of the mediation, neither party acted in bad faith and there was no reason to withhold the FMP certificate. The Markowitzes maintain that document production at mediation requires strict compliance and that a

---

[2]FMR 8 was renumbered to FMR 11, and the relevant portion of the rule currently provides that the trust-deed beneficiary or its representative must provide an "Appraisal and/or Brokers Price Opinion (BPO) not more than 60 days old (prior to the date of mediation)." FMR 11(7)(e) (2013).

BPO prepared beyond the 60-day limit precludes the issuance of an FMP certificate and mandates the imposition of sanctions. Respondents counter that the purpose of providing a BPO or appraisal is to "substantiate the short sale value" that the parties may agree to in the event that a loan modification cannot be reached. Respondents insist that the BPO provided at mediation set forth the value of the property that they would accept in a short sale, and that the Markowitzes were not prejudiced by the age of the BPO. In any case, respondents argue that because no short sale was ever discussed, as the Markowitzes elected to terminate the mediation, the BPO's age was of no relevance.

To determine if a rule's provisions require strict or substantial compliance, this court looks to the rule's language, and we also consider policy and equity principles. *Leyva v. Nat'l Default Servicing Corp.*, 127 Nev. ___, ___, 255 P.3d 1275, 1278 (2011). A rule may contain both mandatory and directory provisions. *See Leven v. Frey*, 123 Nev. 399, 408 n.31, 168 P.3d 712, 718 n.31 (2007); *see also Einhorn v. BAC Home Loans Servicing, LP*, 128 Nev. ___, ___, 290 P.3d 249, 254 (2012); 3 Norman J. Singer, *Statutes and Statutory Construction* § 57:19 (6th ed. 2001). Generally, a rule is mandatory and requires strict compliance when its language states a specific "time and manner" for performance. *Leven*, 123 Nev. at 407 n.27, 408, 168 P.3d at 717 n.27, 718. Time and manner refers to when performance must take place and the way in which the deadline must be met. *See Village League to Save Incline Assets, Inc. v. State Bd. of Equalization*, 124 Nev. 1079, 1088, 194 P.3d 1254, 1260 (2008) (discussing statutory deadlines); *Leven*, 123 Nev. at 407-08, 168 P.3d at 717-18 (addressing three-day recording statute's deadline). "[F]orm and content" provisions, on the other hand, dictate who must take action and what

information that party is required to provide, *Einhorn*, 128 Nev. at ___, 290 P.3d at 254 (stating that "who brings which documents . . . is a matter of 'form'"). Because they do not implicate notice, form and content-based rules are typically directory and may be satisfied by substantial compliance, *id.*, "sufficient to avoid harsh, unfair or absurd consequences." *Leven*, 123 Nev. at 407, 168 P.3d at 717 (quotation omitted). When substantial compliance is sufficient, a party's literal noncompliance with a rule is excused provided that the party complies with "respect to the substance essential to every reasonable objective" of the rule. *Stasher v. Harger-Haldeman*, 372 P.2d 649, 652 (Cal. 1962); *see also* 3 *Sutherland Statutory Construction* § 57:26 (7th ed. 2012). When a party accomplishes such actual compliance as to matters of substance, technical deviations from form requirements do not rise to the level of noncompliance. *Stasher*, 372 P.2d at 652.

Deciding whether a rule is intended to impose a mandatory or directory obligation is a question of statutory interpretation. *See Village League*, 124 Nev. at 1088, 194 P.3d at 1260 (interpreting a statutory time limit); *see also Marquis & Aurbach v. Eighth Judicial Dist. Court*, 122 Nev. 1147, 1156, 146 P.3d 1130, 1136 (2006) (applying rules of statutory construction to the interpretation of a court rule). We review de novo issues of statutory construction. *Leven*, 123 Nev. at 402, 168 P.3d at 714. Our objective when interpreting a rule is to determine and implement its purpose. *Village League*, 124 Nev. at 1088, 194 P.3d at 1260; *see Leyva*, 127 Nev. at ___, 255 P.3d at 1278-79.

## 1.

FMR 8(3)'s language embraces both a mandatory time provision and a directory content provision related to the age of the appraisal used for negotiation purposes at the mediation. The rule states that the deed of trust beneficiary or its representative "shall prepare such papers and provide to the mediator, and exchange the items required to be exchanged with each other party . . . at least 10 days prior to the mediation."[3] FMR 8(1) (2010). One such paper is an appraisal and/or a BPO, which the deed-trust beneficiary "shall produce," and in so doing, "shall prepare an estimate of the 'short sale' value of the residence that it may be willing to consider as a part of the negotiation if loan modification is not agreed upon." FMR 8(3) (2010). The word "shall" is generally regarded as mandatory. *Leyva*, 127 Nev. at ___, 255 P.3d at 1279. Here, the rule provides that the deed-trust beneficiary or its representative "shall produce an appraisal" and "shall prepare an estimate of the 'short sale' value," FMR 8(3) (2010), and it "shall" do so ten days in advance of the mediation. FMR 8(1) (2010). The purpose of FMP mediation is to bring the parties "together to participate in a meaningful negotiation" to resolve the dispute. *Einhorn*, 128 Nev. at ___, 290 P.3d at 250 (citing *Holt v. Reg'l Tr. Servs. Corp.*, 127 Nev. ___, ___, 266 P.3d 602, 607 (2011)). As the rule explains, the value of the home is key to the negotiation, FMR 8(3) (2010), and providing the appraisal is one indicator that the trust-

---

[3]The current rule provides that "[t]he beneficiary of the deed of trust must prepare and submit, at least 10 days prior to the mediation" various documents to be provided to the homeowner and mediator. FMR 11(7) (2013).

Supreme Court
of
Nevada

(O) 1947A

deed beneficiary participated in the mediation in good faith. *Pasillas v. HSBC Bank USA*, 127 Nev. ___, ___, 255 P.3d 1281, 1284 (2011). Thus, the rule's mandatory language weighs in favor of requiring strict compliance, as the appraisal is a necessary document for the mediation and good-faith negotiations therein.

2.

But the rule also provides that the appraisal or BPO shall be prepared "no more than 60 days before the commencement date of the mediation." FMR 8(3) (2010). Separating the rule into its procedural and substantive parts, the "shall prepare such papers . . . at least 10 days prior to the mediation" language refers to the time when the deed of trust beneficiary is required to give the mediator and the homeowners the appraisal or BPO. This provision governs the time and manner for the deed of trust beneficiary to perform one of its duties to negotiate in good faith. Such provisions generally must be complied with strictly. *Leven*, 123 Nev. at 408, 168 P.3d at 718. The rule's "no more than 60 days" old language, however, refers to the age of the appraisal or BPO, so that the parties may negotiate based on the home's present value, and thus, addresses form and content. Such requirements may generally be satisfied by substantial compliance. *Id.*

The policy behind providing a recent appraisal and/or BPO at the mediation is to ensure that the fair market value of the property is known to both parties to the mediation at the time when they are negotiating a potential loan modification or determining whether a short sale would be appropriate. FMR 8(3) (2010). This allows for fully informed negotiations to occur and ensures that offers made are based on the present economic reality concerning the property and are consistent

with the FMP's purpose of bringing the parties together for meaningful negotiation. *Einhorn*, 128 Nev. at ___, 290 P.3d at 250 (citing *Holt*, 127 Nev. at ___, 266 P.3d at 607).

Requiring an appraisal or BPO to be no more than 60 days old facilitates informed negotiation based on accurate information, and this purpose may be met through substantial compliance, as a slightly older BPO may be just as accurate as a 60-day-old BPO. *See Leyva*, 127 Nev. at ___, 255 P.3d at 1279. By contrast, a 200-day-old BPO would likely reflect very different market valuations than a BPO that was reasonably close to the FMR's 60-day valuation window. Providing a BPO that is so old that it has become inaccurate frustrates the FMP's goal. Therefore, the policy concern regarding the age of an appraisal or BPO is a matter of content, which is directory, and the requirement may be satisfied by substantial compliance. *Leven*, 123 Nev. at 408, 168 P.3d at 718.

### 3.

In terms of equity concerns, despite the fact that the underlying 83-day-old BPO was beyond the 60-day limit, the Markowitzes made no effort to demonstrate that it was inaccurate. As such, there appears to be no prejudice or harm to the Markowitzes in having an 83-day-old BPO from which to negotiate a loan modification, *see Einhorn*, 128 Nev. at ___, 290 P.3d at 254, and the goal of providing accurate information to ensure meaningful negotiations was accomplished. *Id.* at ___, 290 P.3d at 250. Thus, in weighing the equities, where the Markowitzes have not shown any prejudice in their ability to negotiate a loan modification based on the BPO age, and respondents would be denied the ability to exercise their contractual remedy of foreclosure for want of a strictly compliant 60-day or younger BPO, we conclude that withholding

SUPREME COURT
OF
NEVADA

(O) 1947A

the FMP certificate would be an inequitably harsh consequence, and equity favors reviewing the BPO for substantial compliance. *See Holt*, 127 Nev. at ___, 266 P.3d at 606-07 (recognizing consequences of denial of the ability to foreclose).

We therefore hold that an appraisal or BPO older than 60 days may nevertheless substantially comply with the FMR sufficient to avoid the imposition of sanctions when there is no evidence that the BPO is so old that it would impair the FMP's policy of facilitating good-faith negotiations or the BPO's content is inaccurate to the extent that the homeowners would be prejudiced. Such is the situation in the present matter, and thus, the district court therefore correctly declined to impose sanctions and denied judicial review based on respondents' stale BPO. *See Edelstein v. Bank of N.Y. Mellon*, 128 Nev. ___, ___, 286 P.3d 249, 260 (2012).

### B.

One other issue remains for our consideration: whether respondents properly participated in the mediation session with the requisite authority to negotiate a loan modification. The Markowitzes argue that the mediation was flawed because Saxon did not establish valid authority to negotiate the loan. Respondents contend that Saxon, as Deutsche Bank's servicer, is a valid representative of Deutsche Bank for purposes of participating in the FMP and that the Markowitzes were aware of the relationship between Saxon and Deutsche Bank.

The deed-trust beneficiary may participate in the FMP mediation directly or through a representative with proper authority to negotiate a loan modification. NRS 107.086(5). The record before us establishes Saxon's status as Deutsche Bank's loan servicer and its

authority to modify the loan in its capacity as Deutsche Bank's representative. The record contains the publicly recorded substitutions of trustee, which the Markowitzes included as exhibits to their petition for judicial review, and which demonstrate Saxon's status as the loan servicer and Deutsche Bank's status as the beneficiary of the deed of trust. Further, the evidence submitted in their judicial review proceeding shows that, until the Markowitzes ceased paying their mortgage, they made payments to Saxon, and thus, they recognized Saxon's role as the loan servicer. And before the Markowitzes defaulted on the loan, they entered into a stipulation that specifically recited that Saxon was the servicing agent for Deutsche Bank. Saxon therefore properly attended the mediation as Deutsche Bank's representative. *See* NRS 107.086(5); *see also Edelstein*, 128 Nev. at ___ n.11, 286 P.3d at 260 n.11 (stating that a servicer is a valid representative under NRS 107.086(5)).

The Markowitzes also contend that respondents lacked authority to participate in the FMP because MERS was incapable of acting as a beneficiary of the deed of trust, and thus, it could not have validly transferred the mortgage note to Deutsche Bank. This court rejected this argument in *Edelstein*, 128 Nev. at ___, 286 P.3d at 260-61 (holding that a MERS assignment of the deed of trust validly transfers the note), and based on the record in this matter, we conclude that through the valid MERS assignment, Deutsche Bank was the beneficiary of the deed of trust and holder of the promissory note, with authority to participate in FMP mediation and modify the loan.[4] The district court therefore did not err in

---

[4]Appellants also argue that the MERS assignment is invalid because it was executed in March 2009, but not notarized until June 2009.

*continued on next page . . .*

determining that respondents validly appeared at the mediation with authority to negotiate a loan modification. *Id.* at ___, 286 P.3d at 260 (explaining that the district court's factual and legal conclusions are reviewed for error, while the choice of sanction is committed to the district court's discretion).

## IV.

We discern no violation that would preclude the FMP certificate from issuing, and we therefore affirm the district court's order.

_____, C.J.
Pickering

_____ J.
Gibbons

_____, J.
Hardesty

_____, J.
Parraguirre

_____, J.
Douglas

_____, J.
Cherry

_____, J.
Saitta

_____

*. . . continued*
Appellants do not cite to any Nevada authority that requires an assignment of a deed of trust to be acknowledged in front of a notary on the date it is generated. *See Einhorn*, 128 Nev. at ___ n.4, 290 P.3d at 252 n.4.