140 Nev., Advance Opinion 64

IN THE COURT OF APPEALS OF THE STATE OF NEVADA

| | |
|---|---|
| THE STATE OF NEVADA SECRETARY OF STATE,<br>Appellant,<br>vs.<br>JUSTUS WENDLAND, AN INDIVIDUAL,<br>Respondent. | No. 85360-COA<br><br>FILED<br><br>SEP 26 2024<br>ELIZABETH A. BROWN<br>CLERK OF SUPREME COURT<br>BY_____<br>CHIEF DEPUTY CLERK |

Appeal from a district court order denying a petition for judicial review in an employment matter. First Judicial District Court, Carson City; James E. Wilson, Judge.

*Reversed and remanded.*

Aaron D. Ford, Attorney General, Cameron P. Vandenberg, Chief Deputy Attorney General, and Bruce C. Young, Deputy Attorney General, Carson City,
for Appellant.

Reese Ring Velto, PLLC, and Alexander R. Velto, Reno,
for Respondent.

BEFORE THE COURT OF APPEALS, GIBBONS, C.J., and BULLA and WESTBROOK, JJ.

*OPINION*

By the Court, WESTBROOK, J.:

For a state employee to administratively appeal a workplace disciplinary action, NAC 284.6562(2)(b) requires the employee to attach a

24-35820

copy of the written notification of discipline to the appeal form. In *Kassebaum v. State, Department of Corrections*, 139 Nev., Adv. Op. 34, 535 P.3d 651 (2023), the Nevada Supreme Court held that an employee's failure to comply with the attachment rule rendered his administrative appeal defective and subject to dismissal. In reaching that conclusion, *Kassebaum* did not address whether the attachment requirement mandates strict compliance or whether it might be satisfied by substantial compliance. Today, we hold that an employee may substantially comply with NAC 284.6562(2)(b)'s attachment requirement by accurately filling out and signing form NDP-54 and then supplying a copy of the written discipline in response to a motion to dismiss. Because Justus Wendland substantially complied, the hearing officer correctly denied the Secretary of State's motion to dismiss for failure to strictly comply with NAC 284.6562(2)(b).

We also address the procedural due process that is owed to permanent classified state employees during internal investigations conducted pursuant to NRS 284.387. In doing so, we conclude that *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985), defines such employees' due process rights prior to the termination of their employment. In accordance with *Loudermill*, due process entitles employees to "oral or written notice of the charges against [them], an explanation of the employer's evidence, and an opportunity to present [their] side of the story" at a pretermination hearing. *Id.* at 546. Because Wendland received the requisite notice, an explanation of the evidence, and an opportunity to respond before the Secretary of State terminated his employment, the hearing officer erred when she found that Wendland's due process rights were violated during the State's pretermination investigation.

Based on her erroneous finding that Wendland's due process rights were violated, the hearing officer declined to consider an independent ground for termination relied on by the Secretary of State. Because this error affected the Secretary of State's substantial rights, we reverse the district court's denial of the Secretary of State's petition for judicial review and remand for proceedings consistent with this opinion.

*FACTS AND PROCEDURAL HISTORY*

In 2012, the Nevada Secretary of State hired Wendland as its Help America Vote Act administrator. In this supervisory position, Wendland provided planning for and managed Nevada's federal elections, oversaw compliance with federal election laws, and administered federal grants received through the Help America Vote Act. The parties do not dispute that Wendland was a permanent classified state employee.

On November 22, 2019, Wendland attended a meeting with his direct supervisor, Wayne Thorley, and Deputy Secretary for Operations, Mark Wlaschin, to discuss their concerns about his work performance. At the meeting, Thorley and Wlaschin provided Wendland with a letter of instruction advising him that they had received multiple complaints about his lack of professionalism and difficulty working with others. Because Wendland had shown an "inability to take direction or instruction" when these behaviors were brought to his attention in the past, the letter was intended to convey that the Secretary of State took the concerns seriously and expected Wendland to "demonstrate a willingness to implement change." At the meeting, Wendland disputed the allegations and appeared unwilling to consider changing his behavior, so Thorley and Wlaschin placed him on administrative leave with pay, to investigate further.

On December 12, 2019, Wlaschin prepared and issued to Wendland the notice of employee rights during an internal investigation required by NRS 284.387(1). The notice advised Wendland that he was under investigation for "[d]isgraceful personal conduct which impairs the performance of a job or causes discredit to the agency" and "[d]iscourteous treatment of public or fellow employees, while on duty," in violation of NAC 284.650. Wlaschin appointed Brett Olin to investigate these allegations.

In late December, Olin interviewed Wendland, who was then accompanied by his attorney. At the interview, Olin informed Wendland he could "supplement" the investigative file with any documents or names of witnesses he believed should be interviewed. In addition to interviewing Wendland, Olin also interviewed 20 of Wendland's current and former supervisors, coworkers, subordinates, and others who worked with Wendland both inside and outside the Secretary of State's office.

On January 9, 2020—after Olin completed his investigation and had already started writing his report—Wendland's attorney offered to provide Olin supplemental information. In response, Olin advised that he had completed his investigation and would not consider additional information. Based on his interviews, Olin compiled a detailed 15-page report that he submitted to Wlaschin, which was later shared with Wendland. Olin's report contained no disciplinary recommendations, but rather described the process of his investigation and summarized each of the 21 witness statements. The report noted that numerous individuals, particularly those in the information technology (IT) and accounting departments, had concerns about Wendland's behavior and lack of professionalism.

On February 6, Wlaschin gave Wendland a second notice of employee rights pursuant to NRS 284.387, which advised Wendland of additional allegations resulting from Olin's investigation. The new allegations involved violations of the Secretary of State's Personal Conduct Guidelines; Prohibitions and Penalties, as follows:

> failing to adhere to acceptable standards of professional conduct; failing to maintain proper work performance standards; failing to cooperate in work related projects with other employees and/or supervisors; discourteous or insulting treatment of a supervisor, fellow employee or the public; and making statements, false or otherwise, intended to demean or disparage supervisor, fellow employees or the public; or intended to disrupt the work environment.

Wendland was not re-interviewed after receiving this second notice. Instead, on February 10, Wlaschin provided Wendland a specificity of charges[1] recommending Wendland's dismissal. As relevant here, the specificity of charges outlined four independent grounds for termination: (1) a November 2019 incident involving travel reimbursement requests; (2) a December 2018 incident where Wendland allegedly aggressively "threw papers across the table" at another employee; (3) an April 2018 incident involving the Clark County elections staff; and (4) general allegations regarding Wendland's disrespectful and unprofessional behavior towards fellow employees and supervisors, including individuals in the Secretary of State's IT and accounting departments. The specificity

---

[1]A specificity of charges—form NDP-41—is a form developed by the State of Nevada Department of Personnel pursuant to NAC 284.656 to inform a permanent state employee of a proposed disciplinary action to be taken against them, its effective date, and the reasons for such action.

of charges also set forth the proposed date that the termination would become effective and the date, time, and place for the predisciplinary review hearing.

As required by NAC 284.6561, a predisciplinary review hearing occurred on March 13, 2020, before Chief Deputy Secretary of State Scott Anderson, who informed Wendland that the hearing was his opportunity to respond to the specificity of charges and the investigation. Wendland, who was represented by counsel, stated that his written position statement, which he had provided to the Secretary of State earlier that same day, would be his response.[2] On March 20, Anderson transmitted a memorandum to the Secretary of State suggesting to uphold the recommendation for dismissal. The Secretary of State provided Wendland a termination letter notifying him of his dismissal on March 23, 2020.

The next day, Wendland appealed his dismissal using the required form NDP-54. Although the form advised Wendland that he must attach the written notification of the challenged discipline, Wendland did not attach the termination letter. However, he did accurately state on the form that the dismissal occurred on March 23 and signed an affirmation that "the information . . . provided is true and correct." He also attached copies of the November 2019 letter of instruction, the specificity of charges, and his position statement.

---

[2]This position statement criticized Olin's investigation report and argued that the behavioral allegations in the specificity of charges were unfounded.

The Secretary of State moved to dismiss Wendland's appeal for lack of jurisdiction pursuant to NAC 284.6562(2)(b), which provides that a request for a hearing to determine the reasonableness of a dismissal of a state employee "must be . . . [a]ccompanied by the written notification of the appointing authority's decision regarding the proposed action." Wendland opposed and attached the termination letter as an exhibit. The hearing officer denied the motion to dismiss, concluding that NAC 284.6562(2)(b) was not jurisdictional and required only substantial compliance, and that Wendland substantially complied by providing the effective date of his dismissal on the appeal form.

A three-day hearing on the merits of Wendland's appeal commenced in November 2020. A total of 15 witnesses testified at the hearing, including Scott Anderson, Mark Wlaschin, Wayne Thorley, Brett Olin, Wendland's attorney, Wendland himself, and several other employees of the Secretary of State who had professional contact with Wendland.

Thereafter, the hearing officer issued a decision reversing Wendland's termination and ordering his reinstatement. The hearing officer found that Wendland's procedural due process rights, as set forth in NRS 284.387, had been violated during the investigation. Specifically, the hearing officer found that the Secretary of State violated NRS 284.387 by failing to give timely and "proper notice of the specific allegations against [Wendland]," by failing to re-interview Wendland after Olin completed his investigation report, and by not allowing Wendland "to submit additional material" in response to the December 12 notice. The hearing officer also found that the general allegations set forth in the specificity of charges violated Wendland's procedural due process rights because they did not "properly inform[ ]" Wendland of the specific misconduct at issue. As a

result, the hearing officer refused to consider whether Wendland's termination was reasonable due to the general allegations of disrespectful and unprofessional behavior.[3]

The Secretary of State petitioned for judicial review in the district court, arguing that Wendland's appeal failed to comply with NAC 284.6562(2)(b) and that his due process rights were not violated. The district court denied the petition, finding that NAC 284.6562(2)(b) can be satisfied by substantial compliance and that Wendland's due process rights were violated both during the investigation and by the nonspecific general allegations in the specificity of charges. This appeal followed.

*ANALYSIS*

"When reviewing a decision of an administrative agency, this court's role is identical to that of the district court: to review the evidence presented to the agency in order to determine whether the agency's decision was arbitrary or capricious and was thus an abuse of the agency's discretion." *Highroller Transp., LLC v. Nev. Transp. Auth.*, 139 Nev., Adv. Op. 51, 541 P.3d 793, 799 (Ct. App. 2023) (internal quotation marks omitted). Where substantial evidence in the record supports a hearing officer's factual findings, we will not disturb such findings on review. *See Nellis Motors v. State, Dep't of Motor Vehicles*, 124 Nev. 1263, 1269-70, 197 P.3d 1061, 1066 (2008) (explaining that this court does not reweigh the

---

[3]The hearing officer did, however, address the allegations concerning the November 2019 travel reimbursement incident and the April 2018 Clark County elections incident and concluded that the Secretary of State had failed to present substantial evidence in support of these allegations. The hearing officer declined to consider the December 2018 paper throwing incident as a basis for termination, finding that a prior oral warning had already served as discipline for that incident. The Secretary of State does not challenge these findings on appeal.

evidence or substitute the hearing officer's judgment on questions of fact with our own judgment).

However, "[a] de novo standard of review is applied when this court addresses a question of law, including the administrative construction of statutes." *Nassiri v. Chiropractic Physicians' Bd.*, 130 Nev. 245, 248, 327 P.3d 487, 489 (2014). Thus, we review de novo whether NAC 284.6562(2)(b) demands strict compliance or may be satisfied by substantial compliance. Similarly, we review "constitutional challenges de novo, including a violation of due process rights challenge." *Eureka County v. Seventh Jud. Dist. Ct.*, 134 Nev. 275, 279, 417 P.3d 1121, 1124 (2018). Finally, to the extent we find error, this court will only reverse where the asserted error is "prejudicial and not harmless." *Khoury v. Seastrand*, 132 Nev. 520, 539, 377 P.3d 81, 94 (2016) (citing NRCP 61).

*NAC 284.6562(2)(b)'s attachment requirement may be satisfied by substantial compliance, as it was here*

Relying on *Kassebaum v. Department of Corrections*, 139 Nev., Adv. Op. 34, 535 P.3d 651 (2023), the Secretary of State argues Wendland's failure to attach a copy of the March 23 termination letter to his NDP-54 appeal form rendered his administrative appeal defective, mandating dismissal. Wendland counters that the attachment requirement of NAC 284.6562(2)(b) may be satisfied by substantial compliance and that substantial evidence supports the hearing officer's finding that he substantially complied in this case.

In *Kassebaum*, the Nevada Supreme Court addressed the attachment requirement in NAC 284.6562(2)(b) and the consequences of an employee's failure to provide the written notification of the authority's decision. The supreme court concluded that NAC 284.6562(2)(b)'s attachment requirement is "mandatory," but not jurisdictional, and thus

the failure to attach the written notification does not "divest the hearing officer of jurisdiction to consider [the] appeal." *Kassebaum*, 139 Nev., Adv. Op. 34, 535 P.3d at 656. Nonetheless, if an employee fails to comply with NAC 284.6562(2)(b), "the appeal is defective and *may* be dismissed" by a hearing officer. *Kassebaum*, 139 Nev., Adv. Op. 34, 535 P.3d at 653 (emphasis added).

Kassebaum conceded that she failed to comply with the attachment requirement when she filed her administrative appeal. Indeed, when her employer pointed out the omission in its motion to dismiss, Kassebaum *still* failed to provide the required disciplinary notice. As a result, the supreme court concluded that the hearing officer did not err in dismissing Kassebaum's administrative appeal. However, in reaching this conclusion, the supreme court did not decide whether NAC 284.6562(2)(b) requires strict or substantial compliance; that is, it did not address whether a hearing officer is *required* to dismiss an appeal for an employee's failure to strictly comply with the attachment requirement.

"The substantial compliance standard recognizes performance as adequate where the reasonable purpose of a statute has been met, even absent technical compliance with the statutory language." *BMO Harris Bank, N.A. v. Whittemore*, 139 Nev., Adv. Op. 31, 535 P.3d 241, 245 (2023). When a provision requires only substantial compliance, a party's technical noncompliance is excused so long as the party complies with respect to the substance essential to every reasonable objective of the rule. *Markowitz v. Saxon Special Servicing*, 129 Nev. 660, 665, 310 P.3d 569, 572 (2013). "Strict compliance, in contrast, requires exact compliance with a statute's terms." *BMO Harris Bank*, 139 Nev., Adv. Op. 31, 535 P.3d at 245.

In deciding whether a statute or rule requires strict or substantial compliance, we first consider whether the statute or rule "uses mandatory language." *Id.*; *see also Markowitz*, 129 Nev. at 665, 310 P.3d at 572 ("The word 'shall' is generally regarded as mandatory."). The use of mandatory language "weighs in favor of requiring strict compliance." *BMO Harris Bank*, 139 Nev., Adv. Op. 31, 535 P.3d at 245. Here, the attachment requirement set forth in NAC 284.6562(2)(b) is "mandatory," *Kassebaum*, 139 Nev., Adv. Op. 34, 535 P.3d at 653, and thus weighs in favor of a strict compliance interpretation, *see BMO Harris Bank*, 139 Nev., Adv. Op. 31, 535 P.3d at 245. However, the use of mandatory language is not dispositive. *See Saticoy Bay LLC v. Nev. Ass'n Servs.*, 135 Nev. 180, 187-89, 444 P.3d 428, 434-35 (2019) (concluding that "substantial compliance with NRS Chapter 116's redemption statute's notice requirement is sufficient" notwithstanding the statutory language that the notice "must" be accompanied by a certified copy of the deed).

We also consider "the type of provision at issue." *BMO Harris Bank*, 139 Nev., Adv. Op. 31, 535 P.3d at 245. If a statute's provision is a "time and manner" restriction, strict compliance is generally required, but "if the provision concerns form and content, substantial compliance may suffice." *Id.* (internal quotation marks omitted). "A time and manner provision addresses when performance must take place and the way in which the deadline must be [met]." *Id.* (emphasis omitted) (internal quotation marks omitted). "Form and content provisions, on the other hand, dictate who must take action and what information that party is required to provide." *Markowitz*, 129 Nev. at 664, 310 P.3d at 572 (internal quotation marks omitted). Here, we conclude that NAC 284.6562(2)(b) is a form and content requirement because it merely dictates which documents must be

COURT OF APPEALS
OF
NEVADA

(O) 1947B

attached to a request for a hearing. *See id.* Thus, this consideration weighs in favor of substantial compliance.

In addition, we consider the purpose of the attachment requirement, which *Kassebaum* determined was "to facilitate the hearing officer's review" of the disciplinary appeal. 139 Nev., Adv. Op. 34, 535 P.3d at 656. But here, the Secretary of State identified, and the hearing officer relied upon, a more specific purpose below: to "provide notice that the agency issued a final decision effective on a particular date." By attaching the disciplinary notice to the hearing request form, an employee can demonstrate to the hearing officer that they timely requested a hearing "within 10 working days after the effective date" of the discipline, as required by NRS 284.390 and NAC 284.6562(1). On appeal, the Secretary of State reiterates that the primary function of the attachment requirement is to "provide notice of the actual final effective date of discipline." However, this purpose can also be served where, as here, the employee has accurately filled out the NDP-54 appeal form, which includes the date of the effective discipline and requires the employee to sign and affirm the truth and correctness of all information contained on the form. Further, to the extent any objection is raised by the government employer, the employee can provide the disciplinary notice in response, as Wendland did in this case. Thus, the purpose of the attachment requirement may be accomplished even absent technical compliance.

Finally, we consider policy and equity principles, with an eye toward avoiding "harsh, unfair[,] or absurd consequences." *Leven v. Frey*, 123 Nev. 399, 407, 168 P.3d 712, 718 (2007) (internal quotation marks omitted). Here, we note that the Secretary of State was not prejudiced by Wendland's failure to attach the notice of discipline. The hearing officer

found that the Secretary of State already knew the date of the termination decision as well as the nature of the disciplinary action, which Wendland provided on the NDP-54 appeal form. Counsel for the Secretary of State also confirmed at oral argument that the Secretary was not "hindered" in any way by Wendland's failure to attach the notice. Therefore, policy and equity principles also support a substantial compliance interpretation of NAC 284.6562(2)(b). *See Markowitz*, 129 Nev. at 664, 310 P.3d at 571.

Accordingly, we hold that NAC 284.6562(2)(b) requires substantial, rather than strict, compliance. We further conclude that substantial evidence supports the hearing officer's finding that Wendland substantially complied in this case. Wendland provided the accurate effective date of his dismissal on form NDP-54 and signed the form, certifying that all information contained on the form was "true and correct." Then, in response to the Secretary of State's motion to dismiss, Wendland provided a copy of the written decision that contained the same information, verifying its accuracy. *See Las Vegas Convention & Visitors Auth. v. Miller*, 124 Nev. 669, 683, 191 P.3d 1138, 1147 (2008) (observing that Nevada cases "have recognized substantial compliance when a required element was present but was incomplete or supplied late"); *cf. Kassebaum*, 139 Nev., Adv. Op. 34, 535 P.3d at 653 (noting that the employee "did not seek leave to amend or otherwise cure her failure to comply with" the attachment requirement in response to her employer's motion to dismiss). Therefore, the hearing officer did not err in denying the motion to dismiss.

*The hearing officer erred as a matter of law in finding that Wendland's due process rights were violated during the investigation and in the specificity of charges*

The Due Process Clauses of the United States and Nevada Constitutions provide that the State shall not "deprive any person of life,

liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1; Nev. Const. art. 1, § 8(2). As a permanent classified employee of the State of Nevada, Wendland had a property interest in his continued employment that entitled him to procedural due process prior to termination. *See Bd. of Regents of State Coll. v. Roth*, 408 U.S. 564, 576-78 (1972) (recognizing that public employees have a property interest in continued employment when state law or a contract guarantees continued employment absent adequate cause for discharge); NRS 284.150(2) (providing that classified state employees "must not be appointed, transferred, promoted, demoted or discharged in the classified service in any manner or by any means other than those prescribed in this chapter and the regulations adopted in accordance therewith").

Unlike an "at will" employee who can be "terminated without liability by either the employer or the employee at any time and for any reason or no reason," *Martin v. Sears, Roebuck & Co.*, 111 Nev. 923, 926, 899 P.2d 551, 553 (1995), a permanent classified state employee may not be terminated unless the agency determines that "the good of the public service will be served thereby," NRS 284.385(1)(a); *see also Nigro v. Nev. State Bd. of Cosmetology*, 103 Nev. 496, 498, 746 P.2d 128, 129 (1987) (distinguishing employees terminable "at will" from "classified" state employees who are entitled to procedural protections under NRS Chapter 284). A permanent classified state employee has the statutory right to challenge any termination decision, including through a post-termination hearing before a hearing officer, and subsequent judicial review. NRS 284.390(2), (9). If a hearing officer deems the termination to have been "without just cause," the employee must be reinstated. NRS 284.390(7). Here, the parties agree that Wendland was entitled to procedural due process prior to his termination;

however, they disagree about the nature of process that was due and whether those rights were violated during his pretermination investigation.

As a general matter, the Nevada Supreme Court has held that procedural due process "requires notice and an opportunity to be heard" before the State may deprive a person of property. *Callie v. Bowling*, 123 Nev. 181, 183, 160 P.3d 878, 879 (2007) (quoting *Maiola v. State*, 120 Nev. 671, 675, 99 P.3d 227, 229 (2004)). Our supreme court has recognized that the right to procedural due process under Nevada's Constitution is consistent with the procedural due process right under the United States Constitution. *See Turner v. Saka*, 90 Nev. 54, 62, 518 P.2d 608, 603 (1974) (observing that Nevada's "standards of procedural due process seem consistent with pronouncements of the United States Supreme Court" requiring notice and an opportunity to be heard).

In *Loudermill*, the United States Supreme Court addressed the procedural due process required before a state could terminate a government employee with a property interest in continued employment. 470 U.S. at 546. The Court recognized several competing interests: the employees' interest in remaining employed; the government's interest in removing any unsatisfactory employees; and the risk of a wrongful termination. *Id.* at 543. To balance those competing interests, the Court concluded that due process required "some form of pretermination hearing." *Id.* However, that hearing "need not be elaborate" where state law provides for a full post-termination administrative hearing and judicial review. *Id.* at 545.

Because Ohio law provided for a post-termination administrative hearing and judicial review, *Loudermill* held that the following pretermination procedures would satisfy the Due Process Clause

in Ohio: "oral or written notice of the charges against [the employee], an explanation of the employer's evidence, and an opportunity to present [the employee's] side of the story." *Id.* at 546 (internal citations omitted). No additional process was necessary; as the Court explained, "to require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." *Id.*

Like Ohio, Nevada provides robust post-termination protections, including a hearing and judicial review. *See* NRS 284.390(2), (9). Therefore, in accordance with *Loudermill*, we hold that a permanent classified state employee in Nevada has a procedural due process right, prior to termination, to notice of the charges, an explanation of the evidence, and an opportunity to respond.

The record reflects that Wendland received the procedural due process required by *Loudermill* prior to his termination. On February 10, 2020, Wendland received a specificity of charges, form NDP-41, which contained all the information required by NAC 284.656. Specifically, form NDP-41 gave Wendland "notice" of the proposed disciplinary action, here, termination; the charges, including the reasons for them and the basis for the proposed action; the proposed date that the termination would become effective; and the date, time, and place of his predisciplinary review hearing. *See Loudermill*, 470 U.S. at 546; NAC 284.656.

Although the hearing officer found that the specificity of charges was not sufficiently "specific" because it also included general allegations of discourteous workplace behavior, we disagree. The general allegations, coupled with the specific incidents of unprofessional behavior, were sufficient to put Wendland on notice that the Secretary of State had

serious concerns about his workplace interactions with coworkers and supervisors in both the IT and accounting departments. *See de Llano v. Berglund*, 282 F.3d 1031, 1035 (8th Cir. 2002) (rejecting a terminated employee's argument that generalized accusations in the notice of dismissal were too vague where such accusations "specifically outlined" the employee's "lack of collegiality" and "harassment" of other personnel); *Linton v. Frederick Cnty. Bd. of Cnty. Comm'rs*, 964 F.2d 1436, 1441 (4th Cir. 1992) (holding that when "the core charges giving rise to the termination are detailed, the inclusion of generalized language can hardly be fatal to the effectiveness of the notice"); *Gniotek v. City of Philadelphia*, 808 F.2d 241, 244 (3d Cir. 1986) (holding that a statement of charges is sufficiently specific if it "allow[s the employee] the opportunity to determine what facts, if any, within his knowledge might be presented in mitigation of or in denial of the charges").

Moreover, prior to receiving the specificity of charges, Wendland had reviewed Olin's detailed 15-page investigative report, which summarized the 21 witness interviews that formed the basis for the Secretary of State's proposed recommendation of termination. With access to this report, Wendland was able to see which witnesses had raised general concerns about his workplace behavior and the manner in which they had described those concerns. As a result, he had a full "explanation of the employer's evidence" prior to his termination. *See Loudermill*, 470 U.S. at 546; *see also Mueller v. Regents of Univ. of Minn.*, 855 F.2d 555, 559 (8th Cir. 1988) (rejecting the appellant's "contention that the notice letter must restate the details of the charges and identify his accuser" where the appellant had previously received a report containing this information).

Finally, Wendland had a meaningful opportunity to respond and present his "side of the story" prior to his termination. *See Loudermill*, 470 U.S. at 546. Wendland appeared with his attorney at the predisciplinary review hearing on March 13, 2020, where he presented a seven-page written position statement as his response. Wendland's position statement referenced the witness statements contained in Olin's investigatory report, relying on those that supported his case and discounting those that did not. Thus, the pretermination procedures in this case satisfied *Loudermill*.

Although Wendland received the procedural due process required by *Loudermill*, the hearing officer found that NRS 284.387 created *additional* due process rights that were violated during the Secretary of State's internal investigation. Specifically, the hearing officer found that the letter of instruction that Wendland received in November 2019, as well as the notice of employee rights during an investigation that he received in December 2019, were untimely and not specific enough to enable Wendland to participate meaningfully in Olin's fact-finding interview. The hearing officer further found that, because Olin did not permit Wendland to submit additional materials before finalizing his report and because Olin did not re-interview Wendland regarding the information he learned from others during the investigation, Wendland did not have a "fair and meaningful opportunity to be heard." We disagree.

In the first place, we note that a violation of state law is not, in and of itself, sufficient to establish a due process violation in the government employment context. *See, e.g., Loudermill*, 470 U.S. at 541 (observing that "once it is determined that the Due Process Clause applies, 'the question remains what process is due'" and "[t]he answer to that

question is not to be found in the [state] statute"); *Boyd v. Owen*, 481 F.3d 520, 524 (7th Cir. 2007) (holding that a district court erred when it found a due process violation based on the state employer's failure to comply with investigatory regulations because, under *Loudermill*, "the requirement of due process is not defined by state rules and regulations"); *Berglund*, 282 F.3d at 1035 (recognizing that "federal law, not state law or [state university] policy, determines what constitutes adequate procedural due process"). To the extent that the hearing officer relied on perceived violations of state law to find a constitutional due process violation in this case, this was error.

Regardless, the hearing officer erred as a matter of law in finding that the Secretary of State violated NRS 284.387 in connection with its investigation. The statute entitled Wendland to timely written notice of the allegations for which he was under investigation, NRS 284.387(1)(a), and it also gave him the right to have a lawyer present "at any time that the employee is questioned," NRS 284.387(1)(b). The Secretary of State complied with this statute.

As required by NRS 284.387(1)(a), as soon as Wendland became the subject of the Secretary of State's internal investigation, it timely notified him of the allegations it was then investigating in the December 12 notice of employee rights during an internal investigation. The contents of this notice—which advised Wendland he was under investigation for "[d]isgraceful personal conduct which impairs the performance of a job or causes discredit to the agency" and "[d]iscourteous treatment of public or fellow employees, while on duty"—were specific enough to satisfy NRS 284.387.

As required by NRS 284.387(1)(b), the Secretary of State permitted Wendland to have his attorney attend the investigative interview with him on December 19. Then, when additional allegations were discovered during the course of Olin's investigation, the Secretary of State issued a *second* notice of employee rights during an investigation, which included those additional allegations. As such, the written notices issued in connection with Wendland's investigation satisfied *both* NRS 284.387 and due process. *See Green Bay Pro. Police Ass'n v. City of Green Bay*, 966 N.W.2d 107, 113 (Wis. Ct. App. 2021) ("*Loudermill* does not require any formal written notice listing all policy violations at issue . . . ."); *Higgins v. Jefferson County*, 344 F. Supp. 2d 1004, 1007 (2004) (observing that *Loudermill* does not require a government employer "to share their internal investigation or include [an employee's] input in such an investigation").

Contrary to the hearing officer's finding, NRS 284.387 did not require the Secretary of State to re-interview Wendland regarding the additional allegations set forth in the second notice of employee rights. Nothing in the plain language of NRS 284.387 requires even an initial investigative interview of an employee under investigation, and procedural due process likewise does not require such an interview. *See, e.g., Derstein v. Kansas*, 915 F.2d 1410, 1413 (10th Cir. 1990) (finding no due process violation where an employee was merely "told of the investigation" but was not himself interviewed), *abrogated on other grounds by Fed. Lands Legal Consortium ex rel. Robart Est. v. United States*, 195 F.3d 1190 (10th Cir. 1999); *Higgins*, 344 F. Supp. 2d at 1007 (finding an employee's due process rights were not violated even though the investigator did not interview the employee).

Similarly, the plain language of NRS 284.387 did not require the Secretary of State to accept documents from Wendland in connection with its investigation. Although Olin told Wendland at his December 19 interview that he could submit additional materials, Wendland did not attempt to submit those materials until after Olin had completed his investigation. And while Olin could have reopened his investigation to accept those materials, NRS 284.387 did not require it.

Furthermore, even if best practices would have been for Olin to accept Wendland's untimely submission and re-interview him upon request, we conclude that Wendland did not suffer any "actual prejudice" from Olin's refusal to do so. *See Jones v. Nev., Comm'n on Jud. Discipline*, 130 Nev. 99, 105, 107, 318 P.3d 1078, 1082, 1084 (2014) (noting that "due process rights generally are not implicated during purely investigatory proceedings" and that "absent due process concerns, relief from any procedural violations occurring during the investigatory stage may be obtained only by a showing of actual prejudice"). As noted above, after the investigation concluded, but before the Secretary of State made its final termination decision, Wendland attended a pretermination hearing with his attorney and submitted a detailed position statement. Thus, after reviewing Olin's investigative report and receiving the second notice of employee rights, Wendland had a full opportunity to present his side of the story before the Secretary of State made the final decision to terminate his employment. Because Wendland's procedural due process rights were not violated in this case, the hearing officer erred by finding otherwise.

*The hearing officer abused her discretion by failing to consider whether the general allegations warranted termination*

Based on the erroneous finding that Wendland's due process rights had been violated during the investigation, the hearing officer

refused to consider an independent ground relied on by the Secretary of State as a basis for Wendland's termination. This was an abuse of discretion that affected the Secretary of State's substantial rights.

By statute, the hearing officer was required to "determine the reasonableness" of the Secretary of State's decision to terminate Wendland's employment. NRS 284.390. Because the agency did not terminate Wendland as a "first-time disciplinary measure,"[4] the hearing officer was required to "review[ ] de novo whether the employee in fact committed the alleged violation," determine whether termination was an appropriate level of discipline for the violation, and then apply "a deferential standard of review to the agency's determination that termination will serve 'the good of the public service.'" *O'Keefe v. Dep't of Motor Vehicles*, 134 Nev. 752, 759-60, 431 P.3d 350, 356 (2018) (quoting NRS 284.385(1)(a)).

In this case, the hearing officer concluded that two of the alleged violations—the November 2019 travel reimbursement incident and the April 2018 Clark County elections incident—were unsupported by substantial evidence. However, the hearing officer failed to consider whether the general allegations of Wendland's unprofessional behavior, including towards the Secretary of State's IT and accounting employees, would warrant termination pursuant to the standard announced in *O'Keefe*. By failing to consider these allegations, the hearing officer could not properly assess the "reasonableness" of the Secretary of State's termination decision, as required by NRS 284.390(1). Because this error necessarily

_____

[4]The hearing officer found that Wendland was given an oral warning in December 2018 and that it could be used in the context of progressive discipline.

affects the Secretary of State's substantial rights, we reverse and remand this case to the district court with instructions to direct the hearing officer to consider evidence relating to the general allegations of unprofessional behavior.[5]

## CONCLUSION

The attachment requirement of NAC 284.6562(2)(b) requires only substantial compliance, and an employee may substantially comply with this requirement by first truthfully and correctly filling out and signing form NDP-54, and then providing the required disciplinary notice in response to a motion to dismiss for noncompliance with the rule. Thus, the district court properly held that Wendland substantially complied with NAC 284.6562(2)(b) and that dismissal of his administrative appeal was not warranted.

However, the district court erred when it found substantial evidence supported the hearing officer's conclusion that Wendland's due process rights were violated during the investigation. Under *Loudermill*, Wendland was entitled to "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story" at a pretermination hearing. 470 U.S. at 546-48.

---

[5]We express no opinion as to whether the general allegations, as a matter of fact or as a matter of law, would warrant termination in this case. The parties did not raise these issues in the instant appeal, and we decline to make the requisite factual determinations in the first instance. *See Greenlaw v. United States*, 554 U.S. 237, 243 (2008) ("[W]e follow the principle of party presentation. That is, we rely on the parties to frame the issues for decisions and assign to courts the role of neutral arbiter of matters the parties present."); *Ryan's Express Transp. Servs., Inc. v. Amador Stage Lines, Inc.*, 128 Nev. 289, 299, 279 P.3d 166, 172 (2012) ("An appellate court is not particularly well-suited to make factual determinations in the first instance.").

Because Wendland received the requisite notice, explanation, and an opportunity to respond before the Secretary of State terminated his employment, his due process rights were not violated.

Based on the erroneous finding that Wendland's due process rights were violated during the investigation, the hearing officer declined to consider whether general allegations of Wendland's unprofessional behavior would warrant his termination. Because we cannot say this error was harmless, we reverse the district court's denial of the Secretary of State's petition for judicial review and remand for proceedings consistent with this opinion.[6]

_____, J.
Westbrook


We concur:

_____, C.J.
Gibbons

_____, J.
Bulla

_____

[6]Insofar as the parties raised other arguments that are not specifically addressed in this opinion, we conclude that they either do not present a basis for relief or need not be reached given the disposition of this appeal.